UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KUMIKO MORIOKA,                           Case No. 18-12365

        Plaintiff,                         Arthur J. Tarnow
   v.                                     United States District Judge

NISSIN TRAVEL SERVICES (U.S.A.),          Stephanie Dawkins Davis
INC., *et al*,                            United States Magistrate Judge

        Defendants.
_____/

**REPORT AND RECOMMENDATION
ON MOTION TO COMPEL ARBITRATION (Dkt. 2)**

## I.    PROCEDURAL HISTORY

Plaintiff Kumiko Morioka filed suit against defendants Nissin Travel and

Ichiro Sugimoto in Wayne County Circuit Court on July 3, 2018.  (Dkt. 1, Exhibit

1).  Defendant Nissin Travel Services (U.S.A.), Inc.[1] ("Nissan Travel") timely

removed the case to the United States District Court for the Eastern District of

Michigan on July 30, 2018 based on diversity of jurisdiction.  (Dkt. 1).  Defendant

Ichiro Sugimoto has not yet been served with the summons and complaint.  On

August 6, 2018, Nissin Travel filed its motion to compel arbitration.  (Dkt. 2).

---

[1] Plaintiff named Missin Travel Services (U.S.A.), Inc. as a defendant.  However, this defendant states that its correct title is Nissin Travel Services (U.S.A.), Inc.  (Dkt. 2, at Pg ID 19).  In her complaint and response brief, she also refers to this defendant as "Nissin Travel." (Dkt. 1, Pg ID 12, ¶ 2; Dkt. 3).  The undersigned will refer to this defendant as Nissin Travel Services (U.S.A.), Inc.

1

Plaintiff responded (Dkt. 3) and Nissin Travel replied (Dkt. 6).  The court

conducted a hearing on the motion on November 1, 2018.  For the reasons that

follow, the undersigned recommends that Nissin's motion be **GRANTED**.

## II.   FACTUAL BACKGROUND

Morioka alleged the following facts in her complaint.  She is a former

employee of Nissin Travel.  (Dkt. 1, ¶ 1).  Despite "excellent numbers," Morioka

was given negative performance reviews to keep her salary down, and she was

belittled in the process.  (¶ 7).  On June 11, 2018, she underwent her most recent

performance review with defendant Sugimoto, a high-ranking executive at Nissin.

(¶ 8).  In this meeting, Sugimoto berated her causing her to experience heart

palpitations and to feel ill.  When she said she needed to leave to get some air,

Sugimoto stood in front of the door spreading his arms and legs across the door,

physically blocking her from leaving and screaming that she could not leave until

he was finished with her.  (¶¶ 9-11).  As a result of this incident, Morioka is on

medication and suffers from PTSD-like symptoms.  (¶ 12).  She contends that

Sugimoto was acting on behalf of and in his capacity as an executive for defendant

Nissin Travel, and therefore Nissin Travel is responsible for Sugimoto's behavior

under the doctrine of *respondeat superior*.  (¶ 13).  She alleges false imprisonment,

intentional infliction of emotional distress, and assault claims against both

defendants.  (Counts I, II, and III).  She also alleges a negligent hiring and supervision claim against Nissin Travel.  (Count IV).

## III.   PARTIES' ARGUMENTS

Nissin Travel brings this motion to compel arbitration.  (Dkt. 2).  Nissin contends that plaintiff is subject to a binding arbitration agreement, the terms of which are contained in its Employee Handbook.  Nissin asserts that Morioka was required to agree to mandatory arbitration as a term of her employment (Dkt. 2-2, Pg. ID 44), and that her acquiescence was documented in the form of an acknowledgement that she signed on April 22, 2015.  (Dkt. 2-3, Pg. ID 49).  Above plaintiff's signature on the acknowledgement page is the following language:

> By signing this and as allowed by law, you waive all rights to a jury trial and agree to mandatory arbitration of all disputes as more completely stated above.

Nissin Travel asserts that the Employee Handbook language relating to arbitration provides that employment-related disputes arising out of or in connection with her employment relationship with the company must be arbitrated.  (Dkt. 2, Pg. ID 27).

Morioka counters that the conduct at issue did not arise out of the employment relationship with Nissin Travel, while Nissin Travel argues that the basis of her complaint centers on her employment and the performance review with her supervisor, which is about her employment relationship.  Morioka insists that the torts committed by Sugimoto and Nissin Travel do not depend on the

3

employment relationship between the parties, and therefore the dispute does not relate to the employment relationship.  (Dkt. 3, at p. 4).  She characterizes the suit as one about "basic uncivilized and tortious behavior that does not concern their employment relationship."  (Dkt. 3, at p. 5).

Plaintiff also challenges the validity of the agreement that Nissin Travel attached to its brief in support.  (Dkt. 2-2, Defendant's Exhibit B).  Exhibit B contains four pages of the Employee Handbook which immediately precede the document at Exhibit C, the signed Acknowledgment page.  (Dkt. 2, at p. 10).  Plaintiff insists that the handbook pages comprising Exhibit B could not have come from the same handbook as the acknowledgement page attached as Exhibit C because the first page of the handbook states that it is current as of May 2, 2015, but plaintiff signed the acknowledgment about 9 days before that date on April 22, 2015.  Morioka posits that Nissin Travel has perpetrated a fraud on the court in presenting the handbook pages as the operative agreement.

Nissin Travel takes a broader view of the arbitration agreement.  Since the agreement covers "all disputes . . . of any kind whatsoever arising out of or in connection with . . . our employment relationship," plaintiff's tort claims arising out of the performance review with her supervisor is a dispute arising out of or in connection with the employment relationship.  (Dkt. 6, at p. 4-5).  In response to Morioka's challenge to the validity of Exhibit B, Nissin Travel asserts that the

4

arbitration agreement is valid regardless of the fact that plaintiff signed the agreement in advance of its effective date.  (Dkt. 6, at p. 3).  Further, Nissin Travel points out that the footer on each page of both Exhibits B and C to its opening brief prove that the acknowledgment page and handbook text pages are the same document: the footer on all the pages states "Nissin Travel Services (U.S.A.), Inc.'s Employee Handbook 2015," with a page range of 44 of 48 to 47 of 48 in Exhibit B, to 48 of 48 in Exhibit C.   The footer of the first page of the handbook states the same, except it is page 1 of 48.  (Dkt. 6, Ex. 1).  Morioka did not offer any other evidence demonstrating that Exhibits B and C are not from the same document.

## IV.   ANALYSIS

### A.   Standard of Review

The Federal Arbitration Act provides that a written agreement to arbitrate disputes arising out of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  A party seeking to enforce an arbitration agreement may request that litigation be stayed until the terms of the arbitration agreement have been fulfilled.  *Id*. § 3.  On such application, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the

court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id*. § 4.

Before compelling arbitration, the Court "must engage in a limited review to determine whether the dispute is arbitrable." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). Such review requires the Court to determine (1) whether "a valid agreement to arbitrate exists between the parties," and (2) whether "the specific dispute falls within the substantive scope of the agreement." *Id*. (quoting *Javitch*, 315 F.3d at 624). With respect to the arbitration agreement's validity, "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks and citations omitted). As to the agreement's scope, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (internal citations and quotation marks omitted). In other words, keeping in mind the "strong federal policy in favor of arbitration ... any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration," *Stout*

6

*v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000), especially when the arbitration clause is written broadly to encompass all claims arising under the contract, *AT&T Techs.*, 475 U.S. at 650.

B.   Analysis

The court must make "a number of threshold determinations before compelling arbitration." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). Specifically, the court must determine: (1) whether the parties agreed to arbitration; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable;[1] and (4) whether to stay the remainder of the proceedings pending arbitration if it concludes that some, but not all, of the claims in the action are subject to arbitration. *Id.*; *see also Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005).

1.      Whether the parties agreed to arbitration

In the view of the undersigned, as explained below the parties agreed to arbitrate their disputes. As a general rule, the enforceability of an arbitration clause depends on the validity of the contract in which it is contained. *Oberhansly v. Ass'n of Better Living & Educ. Int'l*, 2017 WL 2115539, at *4 (W.D. Mich. May

---

[1] This factor is not applicable in this case because plaintiff does not assert any federal statutory claims against these defendants.

16, 2017) (citing *High v. Capital Senior Living Properties 2-Heatherwood, Inc*., 594 F.Supp.2d 789, 797 (E.D. Mich. 2008)).  In Michigan, "the elements of a valid contract are (1) parties competent to enter into a contract; (2) a proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation." *Id*. "'In order to form a valid contract, there must be a meeting of the minds on all the material facts.'" *Id*. (quoting *Kamalnath v. Mercy Memorial Hosp. Corp.*,194 Mich. App. 543, 548 (1992)).  In other words, there must be mutual assent to the material facts.  *Id*. (citing *Kamalnath*, at 548).  The most common assent to a contract is well known: "[g]enerally 'one who signs a contract which she has had an opportunity to read and understand is bound by its provisions."  *Id*, at *6 (quoting *Morris v. Homeowners Loan Corp*., 2007 WL 674770, at *5 (E.D. Mich. Feb. 28, 2007).  Thus, "'the failure to read or understand an agreement is not cause for avoiding same.'"  *Morris*, at *5 (quoting *Carpenter v. Am. Excelsior Co.*, 650 F. Supp. 933, 937 (E.D. Mich. 1987)).

In this case, there does not appear to be any dispute that both parties are competent to enter into a contract or that such an agreement between employer and employee is improper.  Nor does plaintiff complain about any other particular element of a contract.  Plaintiff's continued employment was conditioned on her signing the agreement and both parties were obligated to forego seeking redress in court for any claims in favor of arbitration.  Further, Morioka signed the

8

acknowledgment page containing the agreement to arbitrate.  (Dkt. 2, Ex. B and C).

Morioka does not contest the fact that the signature is hers.   Rather, she challenges the authenticity of the handbook pages that Nissin Travel claims contains the agreement to which she is party.[2]  More particularly, she claims that the pages Nissin Travel has proffered do not match the acknowledgment form she signed.  This argument is not well-taken.  While she asserts that the document containing her signature in Exhibit C does not correspond to the employee handbook pages presented in Exhibit B, a review of the exhibits is not persuasive of her contention and she has not presented evidence by way of affidavit or otherwise to support such a challenge.  As noted above, the footer of Exhibits B and C support the conclusion that the two documents are from the same handbook. Further, the footer is the same on the first page of the handbook, which states that the agreement is effective as of May 1, 2015.  (Dkt. 6, Ex. 1).  And Morioka's signature is directly preceded by language spelling out that she is agreeing to mandatory arbitration.  This evidence tends to support Nissin Travel's contention that Morioka's April 22, 2015 signature is her agreement to the terms of the

---

[2] To the extent that Morioka's response attempts to move the court to sanction Nissin Travel for what she claims are deceptive actions relating to the documents attached as exhibits to its motion, it is violative of ECF Local Rule 5(f) which expressly prohibits combining a response to a motion with a motion for relief.  Therefore, the undersigned does not entertain this request for relief.

employee handbook which went into effect May 1, 2015 and includes the subject arbitration agreement.  The fact that the effective date was 9 days later would seem to be of no moment under the facts of this case.  Plaintiff does not appear to suggest that a party to a contract cannot agree to an effective date post-dating the party's signature, and indeed cites no authority suggesting the same.  Moreover, there is no evidence suggesting that Morioka did not have an opportunity to read and understand the agreement, thus she is bound by its provisions.  *See Oberhansly*, at *6.

2.      The scope of the arbitration agreement

The scope of the arbitration agreement is quite broad:

> In order for there to be a mechanism aimed at resolving employment related disputes quickly and fairly to the benefit of all concerned, all such disputes and controversies of any kind whatsoever arising out of or in connection with (i) our employment relationship or (ii) any alleged wrongful termination for any reason, including, but not limited to, any claim under Title VII of the Civil Rights Act of 1964 and applicable state law or for racial, sexual, age or religious discrimination or (iii) regarding the meaning, interpretation or enforcement of any of the provisions of this Handbook or any amendment hereto or any alleged breach hereof or regarding the meaning, interpretation or enforcement of any of its provisions, or (iv) age or any other type of discrimination due to the Age Discrimination in Employment Act of 1967, Americans with Disability Act, Title VII of the Civil Rights Act of 1964, California Fair Employment and Housing Act, Employee Retirement Income Security Act of 1974 (as each been amended) and all claims for emotional distress or injuries

> resulting from the termination (actual or constructive) of
> your employment with Nissin and breach of any actual or
> implied employment contract and all claims under state
> or federal employment laws and regulations including but
> not limited to, claims of racial discrimination, sexual
> harassment or religious harassment, shall be finally and
> conclusively determined and settled between you and
> Nissin by binding arbitration conducted in the City where
> you are employed.  This arbitration clause shall survive
> termination of the employment relationship.
> . . . .
>
> By signing this and as allowed by law, you waive all
> rights to a jury trial and agree to mandatory arbitration of
> all disputes, all as more completely stated above.

(Dkt. 6, Ex. 1).

Whether a claim falls within the scope of an arbitration agreement is a fact-specific question.

> District courts have the authority to decide, as a threshold
> matter, whether an issue is within the scope of an
> arbitration agreement. *Stout,* 228 F.3d at 714.  A proper
> method of analysis here is to ask if an action could be
> maintained without reference to the contract or
> relationship at issue.  If it could, it is likely outside the
> scope of the arbitration agreement. *Ford v. NYLCare
> Health Plans of Gulf Coast, Inc.,* 141 F.3d 243, 250–51
> (5th Cir.1998) (applying Texas arbitration law under a
> choice of law provision).  Torts may often fall into this
> category, but merely casting a complaint in tort does not
> mean that the arbitration provision does not apply.
> *Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.,* 293
> F.3d 1023, 1030 (7th Cir.2002).  Even real torts can be
> covered by arbitration clauses "[i]f the allegations
> underlying the claims 'touch matters' covered by the
> [agreement]." *Genesco, Inc. v. T. Kakiuchi & Co.,*

11

> *Ltd.,* 815 F.2d 840, 846 (2d Cir.1987).  We are, however,
> aware of the Supreme Court's warning against "forc[ing]
> unwilling parties to arbitrate a matter they reasonably
> would have thought a judge, not an arbitrator, would
> decide."  *First Options,* 514 U.S. at 945, 115 S.Ct. 1920.

*Fazio v. Lehman Bros.*, 340 F.3d 386, 395 (6th Cir. 2003).   The Court

acknowledges the well-established rule that "doubts regarding arbitrability must be

resolved in favor of arbitration." *Fazio*, 340 F.3d at 386 (citing *Moses H. Cone*

*Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  "If the matter at

issue can be construed as within the scope of the arbitration agreement, it should be

so construed unless the matter is expressly exempted from arbitration by the

contract terms."  *Simon v. Pfizer, Inc.*, 398 F.3d 765, 773 n. 12 (6th Cir.

2005) (citations omitted); *see also AT & T Techs., Inc. v. Communications Workers*

*of Am.*, 475 U.S. 643, 650 (1986) (doubts are to be construed in favor of arbitration

"unless it may be said with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute.").

Plaintiff's IIED claim is dependent on and connected to the employment

relationship: Morioka alleges that Sugimoto's behavior was "done with the

intention of inflicting emotional distress on Mrs. Morioka to keep her subordinate

and working in subpar conditions after being demeaned."  (Dkt. 1, ¶ 21).  The same

is true for her negligent hiring and supervision claim.  She claims specifically that

Sugimoto has a long history of abusive treatment of *employees* which made it

reasonably foreseeable that he would engage in assaultive conduct toward *employees*. Morioka asserts that she was assaulted because Nissin Travel permitted Sugimoto to continue his employment with the company. (Dkt. 1-1, ¶¶ 30-33). These two claims are unambiguously raised in connection with her employment relationship with the defendants, and thus are covered by the arbitration agreement.

Plaintiff's false imprisonment and assault claims are perhaps a marginally closer question but are likewise covered by the agreement. Morioka asserts each claim against both her supervisor Sugimoto and Nissin Travel. She cites cases demonstrating that such causes do not require the existence of an employer-employee relationship, but those references are inapposite. While plaintiff's claims of false imprisonment and assault can be maintained without reference to her employment relationship to the two, the torts occurred at work, during work hours, at a performance review with her supervisor. These factors tend to support Nissin Travel's position.

Courts in this circuit follow the principle that the court must "focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Corey v. Allergan, Inc.*, 2014 WL 4557616 (S.D. Ohio Sept. 12, 2014) (quoting *Parsley v. Terminix Int'l Co., L.P.*, 1998 WL 1572764, at *6 (S.D. Ohio Sept. 15, 1998)). For example, in *Brubaker v. Barrett*, 801 F.Supp. 2d 743 (E.D. Tenn.

13

2011), the plaintiff sued her employer and her immediate supervisor after she

discovered that her supervisor had videotaped her through a peep-hole, undressing

in her hotel room during a work-related conference that both were attending out of

state.   She sued for sexual harassment, intentional and negligent infliction of

emotional distress, negligence, constructive discharge, outrageous conduct,

invasion of privacy and recklessness.   Her employer invoked the arbitration

language of its employee handbook which the plaintiff had signed, and moved to

have the matter arbitrated.   The court found that the arbitration clause, which

expressly covered "all employment-related disagreements and problems that

concern a right, privilege or interest recognized by applicable law," was broad in

scope.  *Id.* at 757.   Consequently, the court found that there was a presumption that

the plaintiff's claims fell within its scope. *Id.* (citing *United Steelworkers of Am. V.

Mead Corp.*, 21 F.3d. 128, 131 (6th Cir. 1994) ("Moreover, in cases involving

broad arbitration clauses the Court has found the presumption of arbitrability

'particularly applicable,' and only an express provision excluding a particular

grievance from arbitration or 'the most forceful evidence of a purpose to exclude

the claim from arbitration can prevail.'") (quoting *AT&T Techs. v. Comms.

Workers of Am.*, 475 U.S. 643, 650 (1986).   Because the agreement explicitly

included all employment-related disagreements, employment discrimination,

conditions of employment or termination of employment causes, the court easily

dispatched the plaintiff's negligent supervision, constructive discharge and sexual harassment claims to arbitration.

Like Morioka, the plaintiff in *Brubaker* had also claimed several torts against her employer based on her supervisor's actions. Nevertheless, irrespective of labels, the court found that those claims also fell within the scope of the arbitration agreement. Relying on the factually similar case of *Forbes v. A.G. Edwards & Sons, Inc.*, 2009 WL 424146 (S.D.N.Y. Feb. 18, 2009), where the plaintiff's supervisor had physically attacked her in a hotel room after work hours during a work-related conference, the *Brubaker* court found that the plaintiff's common law tort claims were sufficiently related to her employment to fall within the ambit of the arbitration agreement. The court noted that the conduct at issue involved a co-worker, during a work conference and allegations of a harassing workplace. These circumstances were sufficient to deem the plaintiff's claims to be work-related.

There are circumstances in which tortious action taken during work and perpetrated by a fellow employee may not be considered work related. In *Jones v. Halliburton Co.*, 583 F.3d 228 (5th Cir. 2009), the court held that plaintiff's assault and battery, intentional infliction of emotional distress, and false imprisonment claims were not arbitrable because they did not arise out of the employment relationship. The plaintiff sought damages for being drugged, beaten, and gang-

raped by co-workers while stationed in Iraq for work.  *Id.* at 231.  The court

acknowledged that even broad arbitration clauses, such as the clause in Jones'

contract, are not boundless, that an arbitrable dispute under a broad arbitration

clause has a "significant relationship to the contract."  *Id.* at 235.  The court stated

that when deciding whether a claim falls within the scope of an arbitration

agreement, courts "focus on factual allegations in the complaint rather than the

legal causes of action asserted."  *Id.* at 240 (quoting *Waste Mgmt., Inc. v. Residuos*

*Industrialses Multiquim, S.A. de C.V.*, 372 F.3d 339, 344 (5th Cir. 2004).  In *Jones*

the allegations in the complaint were as follows:  (1) Jones was sexually assaulted

by several Halliburton/KBR employees *in her bedroom, after-hours,* (2) while she

was *off-duty,* (3) following a social gathering outside of her barracks, (4) which

was some distance from where she worked, (5) at which social gathering several

co-workers had been drinking (which, notably, at the time was only allowed in

"non-work" spaces).  *Id.*  The court held that the plaintiff's allegations thus did not

touch matters related to her employment nor did they have a significant

relationship to her employment contract.  *Id.* at 241.  In this case, the alleged torts

occurred during work hours, at work, during a performance review with her

supervisor.  On these facts *Jones* is distinguishable.  *See Phifer v. Michigan*

*Sporting Goods Distributors, Inc.*, 2010 WL 3609376, at *7 (W.D. Mich. July 28,

2010).

16

Thus, while assault and false imprisonment can occur wholly apart from any employment relationship, if the conduct alleged arises from such a relationship it rightly falls into the category of work-related.  Similar to the language of the arbitration agreement in *Brubaker*, Nissin Travel's arbitration provision states that "all [employment related] disputes and controversies of any kind whatsoever arising out of or in connection with (i) our employment relationship," shall be finally and conclusively arbitrated in the city where the employee resides. Morioka's complaint is about her employment relationship: receiving bad performance reviews in the past, the performance review at issue, and Sugimoto's alleged misguided and tortious effort to prevent her from leaving during the review.  Indeed, plaintiff's theory of Nissin Travel's liability is premised on the company's decision(s) as an employer to maintain Sugimoto as its employee supervising plaintiff.  And the facts surrounding the false imprisonment and assault clams are arguably more compellingly work-related here than those found in *Brubaker* and *Forbes*, and largely distinguishable from those alleged in *Jones*. Sugimoto's actions occurred during work hours, at work, while conducting a work task – Morioka's work performance review.  Thus, the factual allegations of the complaint all seem to connect to her employment relationship.  As such, the undersigned concludes that all of plaintiff's claims are subject to arbitration. Moreover, in light of the federal policy in favor of arbitration and resolving

17

disputes in favor of arbitration, because it is not wholly clear that the claims are not arbitrable, the Court should compel arbitration.

      3.    Whether to stay the remainder of the proceedings pending arbitration if the Court concludes that some, but not all, of the claims in the action are subject to arbitration

The undersigned concludes that defendants are entitled to dismissal rather than a stay of this litigation. It is true that where claims are referred to arbitration, the FAA provides for a stay of the court proceedings "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. However, in cases, such as the present one, where all of a party's claims against these defendants are subject to arbitration, courts may properly dismiss the complaint. *See Arnold v. Arnold Corp.–Printed Commc'ns for Bus.*, 920 F.2d 1269, 1275 (6th Cir. 1990) (holding that it was not "error for the district court to dismiss the complaint" after ordering arbitration); *see also Ozormoor v. T-Mobile USA, Inc.*, 354 Fed. Appx. 972, 975 (6th Cir. 2009) (rejecting the argument that the FAA requires district courts to stay suits pending arbitration rather than dismiss them). Indeed, "[t]he weight of authority clearly supports the dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (quoting *Alford v. Dean Witter Reynolds*, *Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). "Most district courts in this circuit agree that the best procedure for enforcing arbitration agreements is

18

to dismiss the court action without prejudice." *Gilchrist v. Inpatient Med. Servs., Inc.*, 2010 WL 3326742, at *5 (N.D. Ohio Aug. 23, 2010) (quoting *Nestle Waters N. Am., Inc. v. Bollman*, 2006 WL 3690804, at *6 (W.D. Mich. Dec. 12, 2006), *aff'd*, 505 F.3d 498 (6th Cir. 2007)); *see also McGill v. Meijer, Inc.*, 2011 WL 1166895, at *4 (W.D. Mich. Mar. 28, 2011) (where arbitration is compelled as to all claims, dismissal for lack of jurisdiction is appropriate, and because this dismissal is not on the merits, it will be without prejudice) (citing *Kruse v. AFLAC Int'l, Inc.*, 458 F. Supp.2d 375, 388 (E.D. Ky. 2006)). Given that all of plaintiff's claims against these defendants are subject to final and binding arbitration, the undersigned recommends that the claims against defendants should be dismissed without prejudice.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion to compel arbitration be **GRANTED** and that the claims against defendant Nissin Travel be **DISMISSED WITHOUT PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

19

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: December 28, 2018                         s/Stephanie Dawkins Davis
                                                Stephanie Dawkins Davis
                                                United States Magistrate Judge

20

## **CERTIFICATE OF SERVICE**

     I certify that on <u>December 28, 2018</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel and parties of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

21